## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| JOANNE BARROWS and SUSAN HAGOOD, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br> vs.<br><br>HUMANA, INC.,<br><br>    Defendant. | Civil File No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

## PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs, JoAnne Barrows and Susan Hagood ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" or "Classes"), by and through their attorneys, bring this class action against Defendant Humana, Inc. ("Defendant" or "Humana") and allege as follows:

## INTRODUCTION

1.   This putative class action arises from Humana's illegal deployment of artificial intelligence (AI) in place of real doctors to wrongfully deny elderly patients care owed to them under Medicare Advantage Plans. The AI Model, known as nH Predict, is used to override real treating physicians' determinations as to medically necessary care patients require. Humana knows that the nH Predict AI Model predictions are highly inaccurate and are not based on patients' medical needs but continues to use this system to deny patients' coverage.

2.      Despite the high rate of wrongful denials, Humana continues to systemically use this flawed AI Model to deny claims because they know that only a tiny minority of policyholders (roughly 0.2%)[1] will appeal denied claims, and the vast majority will either pay out-of-pocket costs or forgo the remainder of their prescribed post-acute care. Humana banks on the patients' impaired conditions, lack of knowledge, and lack of resources to appeal the wrongful AI-powered decisions.

3.      The fraudulent scheme affords Humana a clear financial windfall in the form of policy premiums without having to pay for promised care, while the elderly are prematurely kicked out of care facilities nationwide, forced to deplete family savings to continue receiving necessary medical care, or forced to forgo care altogether, all because an AI Model "disagrees" with their real live doctors' determinations.

4.      Defendant Humana, Inc. is one of the nation's largest insurance companies. Humana provides Medicare Advantage health insurance plans for 5.1 million eligible Americans.[2]

5.      Humana masquerades as an insurer that brings "the human side of healthcare," claiming, "Our approach is simple—offer personalized care from people who care."[3] Humana's CEO Bruce Broussard claims Humana is "continuously working to remove barriers to health and to provide quality care."[4] In reality, Humana systematically

---

[1] Karen Pollitz, et al., *Claims Denials and Appeals in ACA Marketplace Plans in 2021*, KFF (Feb. 9, 2023) https://www.kff.org/private-insurance/issue-brief/claims-denials-and-appeals-in-aca-marketplace-plans/ (last visited Nov. 13, 2023).
[2] *For Each Person,* HUMANA, https://www.humana.com/about/impact/individual  (last visited Nov. 30, 2023).
[3] *About Humana,* HUMANA, https://www.humana.com/about (last updated Nov. 9, 2023).
[4] *Letter From Humana's President and Chief Executive Officer*, HUMANA, https://www.humana.com/about/ceo-message (last updated Nov. 9, 2023).

deploys the AI algorithm to prematurely and in bad faith discontinue payment for healthcare services for elderly individuals with serious diseases and injuries. These elderly patients are left either with overwhelming medical debt, or without the medical care that they require.

6.      The nH Predict AI Model determines Medicare Advantage patients' coverage criteria in post-acute care settings with rigid and unrealistic predictions for recovery.[5] Relying on the nH Predict AI Model, Humana purports to predict how much care an elderly patient "should" require but overrides real doctors' determinations as to the amount of care a patient in fact requires to recover. As such, Humana makes coverage determinations not based on individual patient's needs, but based on the outputs of the nH Predict AI Model, resulting in the inappropriate denial of necessary care prescribed by the patients' doctors. Humana's implementation of the nH Predict AI Model resulted in a significant increase in the number of post-acute care coverage denials.

7.      Humana intentionally limits its employees' discretion to deviate from the nH Predict AI Model predictions by collaborating with naviHealth to set targets to keep stays at post-acute care facilities within 1% of the days projected by the AI Model.[6] Employees who deviate from the nH Predict AI Model projections are disciplined and terminated, regardless of whether a patient requires more care.[7]

---

[5] Casey Ross and Bob Herman, *Denied by AI: How Medicare Advantage plans use algorithms to cut off care for seniors in need*, STAT (Mar. 13, 2023), https://www.statnews.com/2023/03/13/medicare-advantage-plans-denial-artificial-intelligence/ (last visited Nov. 13, 2023).

[6] Casery Ross and Bob Herman, *UnitedHealth Pushed Employees to Follow an Algorithm to Cut Off Medicare Patients' Rehab Care*, STAT (Nov. 14, 2023), https://www.statnews.com/2023/11/14/unitedhealth-algorithm-medicare-advantage-investigation/#:~:text=The%20nation's%20largest%20health,a%20STAT%20investigation%20has%20found. (Humana uses the same nH Predict model as UnitedHealth).

[7] *Id.*

8.     The nH Predict AI Model saves Humana money by allowing them to deny claims they are obligated to pay and otherwise would have paid by eliminating the labor costs associated with paying doctors and other medical professionals for the time needed to conduct an individualized, manual review of each of its insured's claims.

9.     Humana also utilizes the nH Predict AI Model to aggressively deny coverage because they know they will not be held accountable for wrongful denials.

10.     In many instances, Humana purposefully shifts the financial responsibilities of funding post-acute care of its insureds to American taxpayers. In its coverage denial letters, Humana informs patients who qualify for Medicare that their coverage is being denied solely due to their Medicare eligibility. Humana directs these patients to enroll in the government-subsidized Medicare program while failing to cover care for which they are contractually and statutorily obligated to cover.

11.     Plaintiffs and Class members had their post-acute care coverage wrongfully terminated by Humana using the nH Predict AI Model. Humana failed to use reasonable standards in evaluating the individual claims of Plaintiffs and Class members and instead allowed their coverage needs to be wholly determined by AI.

12.     By engaging in this misconduct, Humana breached its fiduciary duties, including the duties of good faith and fair dealing, because its conduct serves Humana's own economic self-interest and elevates Humana's interests above the interests of the insureds.

13.     By bringing this action, Plaintiffs seek to remedy Humana's past improper and unlawful conduct by recovering damages to which Plaintiffs and the Class are

rightfully entitled and enjoin Humana from continuing to perpetrate its scheme against its Medicare Advantage insureds.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d)(2). This is a class action in which there is a diversity of citizenship between at least one Plaintiff Class member and one Defendant; the proposed Classes each exceed one hundred members; and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

15.     In addition, under 28 U.S.C. §1367, this Court may exercise supplemental jurisdiction over the state law claims because all claims are derived from a common nucleus of operative facts and are such that Plaintiffs would ordinarily expect to try them in one judicial proceeding.

16.     This Court has personal jurisdiction over Humana, Inc. because Humana, Inc. is headquartered in Kentucky, has sufficient minimum contacts with Kentucky, and otherwise purposefully avail themselves of the benefits and protections of Kentucky law, so as to render the exercise of jurisdiction by this Court proper and consistent with traditional notion of fair play and substantial justice.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Humana, Inc. regularly conducts business in this District, and a substantial part of the events giving rise to the claims asserted herein occurred in this District. Humana, Inc. resides in this District, being headquartered at 500 West Main St., Louisville, KY 40202.

## THE PARTIES

18.     **Plaintiff, JoAnne Barrows.** JoAnne Barrows was at all times relevant to this action a citizen of Minnesota, residing in Hennepin County. At all relevant times mentioned herein, Ms. Barrows was covered by a Medicare Advantage Plan policy provided by Humana.

19.     **Plaintiff, Susan Hagood.** Susan Hagood was at all times relevant to this action a citizen of North Carolina, residing in Buncombe County. At all relevant times mentioned herein, Ms. Hagood was covered by a Medicare Advantage Plan policy provided by Humana.

20.     **Defendant Humana, Inc.** Humana, Inc. is a Delaware corporation, headquartered at 500 West Main St., Louisville, KY 40202. Humana, Inc. conducts insurance operations throughout the country, representing to consumers that it "mak[es] healthcare more equitable and accessible," and that it "make[s] it easier for people to achieve their best health."[8] Humana, Inc. has a license to use the federally registered service mark "HUMANA," markets and issues health insurance and insures, issues, administers, and makes coverage and benefit determinations related to the health care policies nationally through its controlled agents and undisclosed principals and agents. Defendant Humana, Inc. is licensed and registered to conduct business in all 50 states, and does conduct business in all 50 states, and is thereby subject to the laws and regulations of all 50 states.

## FACTUAL ALLEGATIONS

### A. Background

---

[8] *Humana's Impact*, HUMANA, https://www.humana.com/about/impact (last updated Nov. 9, 2023).

21.     Humana offered and sold Medicare Advantage health insurance plans to consumers, including Plaintiffs and Class members.

22.     A Medicare Advantage plan is a type of health plan offered by private companies that contract with Medicare. Medicare Advantage is a taxpayer-funded alternative to traditional Medicare that covers 30.8 million people.[9] Medicare Advantage accounts for more than half (51 percent) of the eligible Medicare population, and $454 billion (or 54 percent) of total federal Medicare spending.[10]

23.     Plaintiffs and Class members enrolled with Humana to receive Medicare Advantage health insurance coverage. Medicare Advantage Plans must follow the rules set by Medicare.[11] Humana provided Plaintiffs and members of the Class with written terms explaining the plan coverage Humana offered to them. According to these terms, Humana is obligated to provide benefits for covered health services and must pay all reasonable and medically necessary expenses incurred by a covered member.

24.     From at least December 12, 2019, to the present (the "Relevant Period"), Plaintiffs and Class members were referred to and received "post-acute care"—medically necessary care for patients recovering from serious illnesses and injuries. Post-acute care is covered by the terms of their insurance agreements provided by Humana.

25.     Post-acute care encompasses skilled care, therapy, and other services provided by home health agencies (HHAs), skilled nursing facilities (SNFs), inpatient

---

[9] Nancy Ochieng, et al., *Medicare Advantage in 2023: Enrollment Update and Key Trends*, KFF (Aug. 9, 2023), https://www.kff.org/medicare/issue-brief/medicare-advantage-in-2023-enrollment-update-and-key-trends/ (last visited Nov. 13, 2023).
[10] *Id.*
[11] *Your Health Plan Options*, MEDICARE.GOV, https://www.medicare.gov/health-drug-plans/health-plans/your-health-plan-options (last visited Nov. 13, 2023).

rehabilitation facilities (IRFs), acute inpatient rehab facilities (AIRs), acute rehab units (ARUs), and long-term care hospitals (LTCHs), collectively known as post-acute care (PAC) providers because they typically furnish care after an inpatient hospital stay.

26.     Medicare Advantage providers use a prospective payment system for each type of PAC provider. Under this system, insurers pay PAC providers an upfront fee that is based on estimates of the national average cost of providing covered care for a specified period of time.

27.     Due to the nature of the prospective payment system, insurers' coverage decisions occur before or during a patient's post-acute care. When the insurer decides to end coverage before the doctor's requested discharge date for the patient, the patients are left with an impossible choice: to either forgo their post-acute care despite not being well enough to function without it or pay out-of-pocket to continue receiving care they were wrongfully denied—if they can afford it.

28.     Humana has deliberately failed to fulfill its statutory, common law, and contractual obligations to have a doctor determine individual coverage for post-acute care in a thorough, fair, and objective manner, instead using the nH Predict AI Model to supplant real doctors' recommendations and patients' medical needs. Humana's use of the nH Predict AI Model, which directs Humana's medical review employees to prematurely stop covering care without considering an individual patient's needs, is systematic, illegal, malicious, and oppressive.[12]

---

[12] Casey Ross and Bob Herman, *Denied by AI: How Medicare Advantage plans use algorithms to cut off care for seniors in need*, STAT (Mar. 13, 2023), https://www.statnews.com/2023/03/13/medicare-advantage-plans-denial-artificial-intelligence/ (last visited Nov. 13, 2023).

29.     The nH Predict AI Model attempts to predict the amount of post-acute care a patient "should" require, pinpointing the precise moment when Humana will cut off payment for a patient's treatment. The nH Predict AI Model compares a patient's diagnosis, age, living situation, and physical function to similar patients in a database of six million patients it compiled over the years of working with providers to predict patients' medical needs, estimated length of stay, and target discharge date[13].

---

[13] *Id.*

30.    The following is a true and correct representation of a sample nH Predict

Outcome sheet, taken from a naviHealth presentation:[14]



31.     Humana wrongfully delegates its obligation to evaluate and investigate claims to the nH Predict AI Model. The nH Predict AI Model spits out generic recommendations based on incomplete and inadequate medical records and fails to adjust for a patient's individual circumstances and conflict with basic rules on what Medicare Advantage plans must cover.

32.     Upon information and belief, the nH Predict AI Model applies rigid criteria from which Humana's employees are instructed not to deviate. The employees who deviate from the nH Predict AI Model prediction are disciplined and terminated, regardless of whether the additional care for a patient is justified.

33.     Under Medicare Advantage Plans, patients who have a three-day hospital stay are typically entitled to up to 100 days in a nursing home. With the use of the nH Predict AI Model, Humana cuts off payment in a fraction of that time. Patients rarely stay in a nursing home more than 14 days before they start receiving payment denials.[15]

34.     Upon information and belief, the outcome reports generated by nH Predict are rarely, if ever, communicated with patients or their doctors. When patients and doctors request their nH Predict reports, Humana's employees deny their requests and tell them that the information is proprietary.

35.     Upon information and belief, over 90 percent of patient claim denials are reversed through either an internal appeal process or through federal Administrative Law

---

[14]     *NaviHealth Guiding the Way – Animated Explainer*, ECG PRODUCTIONS https://www.ecgprod.com/navihealth-guiding-the-way-animated-explainer/ (last visited Nov. 13, 2023).

[15]     Casey Ross and Bob Herman, *Denied by AI: How Medicare Advantage plans use algorithms to cut off care for seniors in need*, STAT (Mar. 13, 2023) https://www.statnews.com/2023/03/13/medicare-advantage-plans-denial-artificial-intelligence/ (last visited Nov. 13, 2023).

Judge (ALJ) proceedings. This demonstrates the blatant inaccuracy of the nH Predict AI Model, and the lack of human review involved in the coverage denial process.

36.     Humana fraudulently misled its insureds into believing that their health plans would individually assess their claims and pay for medically necessary care.

37.     Had Plaintiffs and Class members known that Humana would evade the legally required process for reviewing patient claims and instead delegate that process to its nH Predict AI Model to review and deny claims, they would not have enrolled with Humana and/or would not have paid for their plan the amount they had to pay to be enrolled.

38.     Humana's use of the nH Predict AI Model to deny its insureds' claims undermines the principles of fairness and meaningful claim evaluation, which insureds expect from their insurers.

### B.  Plaintiff JoAnne Barrows

39.     Plaintiff JoAnne Barrows is enrolled in the Medicare Advantage Plan provided by Humana.

40.     In November of 2021, 86-year-old JoAnne Barrows fell at home and fractured her leg. On or around November 23, 2023, Ms. Barrows was admitted to Methodist Hospital in St. Louis Park, Minnesota, where she was placed in a cast and put on a non-weight-bearing order for six weeks.

41.     On or around November 26, 2021, Ms. Barrows was discharged from Methodist Hospital and admitted to the Good Samaritan Society Ambassador rehabilitation facility in Robbinsdale, Minnesota.

42.    On or around December 9, 2021, Humana informed Ms. Barrows that they were terminating her coverage in two days, on December 11, after only approximately two weeks of care.

43.    Ms. Barrows and her doctor were bewildered by Humana's premature termination of coverage because Ms. Barrows was still under a non-weight-bearing order for four more weeks. Ms. Barrows's doctor recommended that she continue rehabilitation treatment, but Humana refused to cover additional treatment.

44.    Ms. Barrows and her family vigorously appealed Humana's denial, but their efforts were unsuccessful. The appeals were denied, and Humana deemed Ms. Barrows ready to return home despite being bedridden and using a catheter.

45.    Because Ms. Barrows was not yet fit to return home, her family had no choice but to pay for her stay at the Good Samaritan Society Ambassador rehabilitation facility out of pocket.

46.    Due to the high cost of the Good Samaritan Society Ambassador rehabilitation facility, Ms. Barrows' family made the difficult decision to transfer her to an assisted living facility, which was less expensive.

47.    Unfortunately, the care provided at the assisted living facility was substandard, resulting in the deterioration of Ms. Barrows's condition.

48.    As a result, Ms. Barrows's family had to make another difficult decision and end her care due to the poor quality of care she was receiving. On or around December 22, 2021, Ms. Barrows returned home, but she was not in a physical state to be there safely. She was unable to use her injured leg, could not go to the restroom without assistance, and still had a catheter in.

13

49.     Due to Humana's wrongful denial of coverage, Ms. Barrows health was significantly impacted as she could not afford to receive the care she needed and was entitled to. Ms. Barrows also suffered significant economic losses in the form of out of pocket payments for treatment that should have been otherwise covered by her plan.

**C. Plaintiff Susan Hagood**

50.     Plaintiff Susan Hagood is enrolled in the Medicare Advantage plan provided by Humana.

51.     On or around September 10, 2022, Ms. Hagood was admitted to Mission Hospital in Asheville, North Carolina, with a urinary tract infection, sepsis, and a spinal infection.

52.     On or around October 26, 2022, Ms. Hagood was discharged from Mission Hospital with eleven discharging diagnoses, including sepsis, acute kidney failure, kidney stones, nausea and vomiting, a urinary tract infection, osteomyelitis of lumbar spine, and an L3 phlegmon.

53.     She was admitted to a skilled nursing facility, The Oaks at Brevard, the same day. During her time at the skilled nursing facility, Ms. Hagood was on a maximum allowable dose of oxycodone and constantly endured exceptionally high pain levels.

54.     Additionally, Ms. Hagood suffered from low oxygenation, which developed into pneumonia.

55.     After a telehealth conference with her infectious disease specialist on or around November 15, 2022, Ms. Hagood scheduled an appointment at Mission Hospital for November 28, 2022.

14

56.     Upon return to Mission Hospital on November 28, 2022, she experienced a rapid spike in blood pressure and was taken to the emergency room, where it was discovered that Ms. Hagood's condition had worsened considerably. She was diagnosed with a multi-level disc edema with discitis osteomyelitis, consolidative phlegmon within her epidural spaces, a large staghorn calculus in each kidney, and pneumonia.

57.     On or around November 27, 2022, Humana denied Ms. Hagood's claim for the treatment she received at The Oaks at Brevard between November 14 and November 28, refusing to pay for half of her month-long stay. Despite Ms. Hagood's critical condition, Humana denied her coverage, explaining that Ms. Hagood did not require the level of care a skilled nursing facility provided and should be discharged home.

58.     Ms. Hagood and her family have incurred over $24,000 in out-of-pocket medical expenses for treatment that Humana should have covered.

59.     To date, Ms. Hagood remains in a skilled nursing facility and requires ongoing medical care due to her health condition.

///

///

///

## CLASS ALLEGATIONS

60.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Class which Plaintiffs seek to represent comprises:

> "All persons who purchased Medicare Advantage Plan health insurance from Defendant in the United States during the period of four years prior to the filing of the complaint through the present."

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

61.     The Multi-State subclass which Plaintiffs seek to represent comprises:

> "All persons who purchased Medicare Advantage Plan health insurance from Defendant during the period of four years prior to the filing of the complaint through the present in the following states: Arizona, California, Colorado, Delaware, Hawaii, Iowa, Kentucky, Massachusetts, Nebraska, North Carolina, North Dakota, Ohio, Oklahoma, Rhode Island, South Carolina, South Dakota, Vermont, Washington, West Virginia, Wisconsin, and Wyoming."

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

///

///

///

62.     The North Carolina Subclass which Plaintiffs seek to represent comprises:

> "All persons who purchased Medicare Advantage Plan health insurance from Defendant in the state of North Carolina during the period of four years prior to the filing of the complaint through the present."

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

63.    The Class is so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands to millions throughout the United States and the named states. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Humana and third-party retailers and vendors.

64.    Common questions of fact and law predominate over questions that may affect individual class members, including the following:

> a.    Whether Humana's delegation of coverage determinations to an automated procedure resulted in a failure to diligently conduct a thorough, fair, and objective investigation into determinations of claims for medical expenses submitted by insureds and/or healthcare providers;
>
> b.    Whether Humana automatically denied coverage for claims submitted by insureds and/or healthcare providers without adhering to Medicare's detailed coverage criteria;
>
> c.    Whether Humana's denials of coverage are based on its use of nH Predict AI Model to determine a patients' care needs based on Humana's or naviHealth, Inc.'s internally-generated criteria;

d.    Whether Humana failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies; and

e.    Whether Humana has a practice of relying on the nH Predict AI Model to make coverage denials instead of engaging in good-faith individual coverage determinations.

65.    Plaintiffs' claims are typical of the claims of the Class and arise from the same common practice and scheme used by Humana to deny coverage for the members of the Class. In each instance, Humana used the nH Predict AI Model to review, process, and reduce coverage without adhering to the coverage determination standards set by Medicare. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained competent and experienced counsel in class action and other complex litigation.

66.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Humana's misconduct. Plaintiffs and the Class had their coverage automatically and illegally denied by Humana's use of the nH Predict AI Model without individualized evaluation of their medical records by Humana's medical directors.

67.    A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

68.    The trial and litigation of Plaintiffs' claims are manageable. Individual litigation of the legal and factual issues raised by Humana's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer

management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

69.     Humana has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Humana.

70.     Absent a class action, Humana will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class will continue to suffer losses and Humana will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT—NATIONWIDE**
*(On Behalf of Plaintiffs and the Nationwide Class)*

71.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

72.     Humana formed an agreement and entered into a contract of insurance ("insurance agreement") with Plaintiffs and Class members including offer, acceptance, and consideration.

73.     Pursuant to that insurance agreement, Plaintiffs and the Class paid money to Humana in exchange for Humana providing a health insurance policy to Plaintiffs and the

Class. Humana received premiums in exchange for the issuance of a policy of health insurance.

74.     Each insurance agreement included, without limitation, Defendant's duty to exercise its fiduciary duties to policyholders, abide by applicable state laws, and adequately review and inform policyholders prior to a claim denial.

75.     Plaintiffs and the Class performed their obligations under the contract by timely paying the amounts due under the contract.

76.     Humana breached each insurance agreement by, without limitation, failing to keep its promise to fulfill its fiduciary duties to policyholders, abide by applicable state laws, provide a thorough, fair, and objective investigation of each submitted claim prior to a claim denial, and provide written statements to Plaintiffs and the Class, accurately listing all bases for Humana's denial of claims and the factual and legal bases for each reason given for such denial.

77.     By using the nH Predict AI Model to unreasonably deny Plaintiffs' and Class members' claims without an adequate individualized investigation, Humana breached the insurance agreement.

78.     As a direct and proximate result of Humana's breach of contract, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING—NATIONWIDE**
***(On Behalf of Plaintiffs and the Nationwide Class)***

79.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

80.     Plaintiffs and Class members entered into written insurance agreements with Humana and that provided for coverage for medical services administered by healthcare providers.

81.     Pursuant to the contracts, Humana implied and covenanted that they would act in good faith and follow the law and the contracts with respect to the prompt and fair payment of Plaintiffs' and Class members' claims.

82.     Humana has breached its duty of good faith and fair dealing by, among other things:

      a.  Improperly delegating its claims review function to the nH Predict system which uses an automated process to improperly deny claims;

      b.  Failing to require its agents to conduct a thorough, fair, and objective investigation of each submitted claim, such as examining patient records, reviewing coverage policies, and using their expertise to decide whether to approve or deny claims to avoid unfair denials.

83.     Humana's practices as described herein violated its duties to Plaintiffs and Class members under the insurance contracts.

84.     Humana's practices as described herein constitute an unreasonable denial of Plaintiffs' and Class members' rights to a thorough, fair, individualized, and objective investigation of each of their claims in breach of the implied covenant of good faith and fair dealing arising from Humana's insurance agreements.

85.     Humana's practices as described herein further constitute an unreasonable denial to pay benefits due to Plaintiffs and Class members in breach of the implied covenant of good faith and fair dealing arising from Humana's insurance agreements.

86.     Humana's wrongful denial of Plaintiffs' and Class members' right to a thorough, fair, and objection investigation and a wrongful denial of claims damaged Plaintiffs and Class members.

87.      As a direct and proximate result of Humana's breaches, Plaintiffs and Class members have suffered and will continue to suffer in the future, economic losses, including the benefits owned under the health insurance plans in the millions, the interruption in Plaintiffs' and Class members' businesses, and other general, incidental, and consequential damages, in amounts according to proof at trial. Plaintiffs and Class members are also entitled to recover statutory and prejudgment interest against Humana.

88.     Humana's misconduct was committed intentionally, in a malicious, fraudulent, despicable, and oppressive manner, entitling Plaintiffs and Class members to punitive damages against Defendant.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT—NATIONWIDE**
***(On Behalf of Plaintiffs and the Nationwide Class)***

89.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

90.     By delegating the claims review process to the nH Predict system, Humana knowingly charged Plaintiffs and Class members insurance premiums for a service that Humana failed to deliver; this was done in a manner that was unfair, unconscionable, and oppressive.

91.     Humana knowingly received and retained wrongful benefits and funds from Plaintiffs and Class members. In so doing, Humana acted with conscious disregard for the rights of Plaintiffs and Class members.

92.     As a result of Humana's wrongful conduct as alleged herein, Humana has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

93.     Humana's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

94.     Under the common law doctrine of unjust enrichment, it is inequitable for Humana to be permitted to retain the benefits they received, without justification, from arbitrarily denying its insureds medical payments owed to them under Humana's policies in an unfair, unconscionable, and oppressive manner. Humana's retention of such funds under such circumstances making it inequitable to retain the funds constitutes unjust enrichment.

95.     The financial benefits derived by Humana rightfully belong to Plaintiffs and Class members. Humana should be compelled to return in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by Humana.

96.     Plaintiffs and members of the Class have no adequate remedy at law.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF N.C. Gen. Stat. § 58-63-15—NORTH CAROLINA**
**UNFAIR CLAIMS SETTLEMENT PRACTICES**
*(On Behalf of Plaintiff Susan Hagood and the North Carolina Class)*

97.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

98.     Pursuant to N.C. Gen. Stat. § 58-63-15, Humana is prohibited from engaging in unfair claims settlement practices.

99.     Humana has nevertheless engaged, and continues to engage, in unfair claims settlement practices by using the nH Predict algorithm to unreasonably and prematurely refuse to cover care for Medicare Advantage patients in post-acute care facilities without sufficient individual and holistic review.

100.    Defendant failed to initiate and conclude a claims investigation into Plaintiffs' and Class member's claims with all reasonable dispatch. Instead, Defendant relied on the nH Predict AI Model to deny Plaintiffs' claims in bad faith and without an individualized investigation.

101.    Defendant made no good faith attempt to effectuate a fair and equitable settlement of Plaintiffs' and Class members' claims, for which liability would have been reasonably clear had Defendant conducted an adequate investigation.

102.    Defendant failed to adopt and implement reasonable standards for the prompt investigation of claims arising under their insurance policies.

103.    In issuing its denials based on nH Predict, Defendant refused to pay claims without conducting a reasonable investigation based upon all available information.

104.    As a direct and proximate result of Defendant's violation of N.C. Gen. Stat. § 58-63-15, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

**VIOLATION OF N.C. Gen. Stat. § 58-63-15—NORTH CAROLINA**
**UNFAIR CLAIMS SETTLEMENT PRACTICES**
*(On Behalf of Plaintiff Susan Hagood and the North Carolina Class)*

105.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

106.    Pursuant to N.C. Gen. Stat. § 75-1.1, Humana is prohibited from engaging in unfair or deceptive acts or practices, or unfair methods of competition, in or affecting commerce.

107.    Humana has nevertheless engaged, and continues to engage, in unfair or deceptive acts or practices or unfair methods of competition in or affecting commerce by using the nH Predict algorithm to unreasonably and prematurely refuse to cover care for Medicare Advantage patients in post-acute care facilities without sufficient individual and holistic review.

108.    Violations of N.C. Gen. Stat. § 58-63-15(11) constitute *per se* violations of N.C. Gen. Stat. § 75-1.1. As alleged in the immediately preceding cause of action, Humana has violated N.C. Gen. Stat. § 58-63-15(11), resulting in a *per se* violation of N.C. Gen. Stat. § 75-1.1.

109.    Defendant failed to initiate and conclude a claims investigation into Plaintiffs' and Class member's claims with all reasonable dispatch. Instead, Defendant relied on the nH Predict AI Model to deny Plaintiffs' claims in bad faith and without an individualized investigation.

110.    Defendant made no good faith attempt to effectuate a fair and equitable settlement of Plaintiffs' and Class members' claims, for which liability would have been reasonably clear had Defendant conducted an adequate investigation.

111.    As a direct and proximate result of Defendant's violation of N.C. Gen. Stat. § 58-63-15, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
### INSURANCE BAD FAITH—NORTH CAROLINA
#### *(On Behalf of Plaintiffs and the Multi-State Class)*

112.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

113.    Defendant used and continues to use the nH Predict AI Model to unreasonably refuse coverage for medically necessary post-acute care. The nH Predict AI Model does not account for individuals' unique circumstances or the statutorily required coverage determination criteria. The nH Predict AI Model denies coverage that is legally guaranteed to Defendant's insureds.

114.    Defendant lacked a reasonable basis for refusing to cover policyholders' post-acute care. Defendant's use of previous patients' data to determine its insureds' future care without regard for individual circumstances, doctors' recommendations, and patients' actual conditions is unreasonable.

115.    Defendant's denials breach the insurance agreement and are made in bad faith to save money on costly post-acute care coverage. Defendant ignored patients' medical records, individual circumstances, and physicians' notes while strictly adhering to whatever recommendations the nH Predict AI Model issued.

116.    Defendant knew or reasonably should have known that the nH Predict AI Model was not a suitable substitute for individual holistic review of Plaintiffs' and the Class members' claims. Due to the enormous increase in the number of coverage denial

appeals, as well as the 90 percent success rate of those appeals, Defendant has been put on notice that the nH Predict AI Model wrongly denies coverage in the vast majority of cases.

117.    By using nH Predict to predict Plaintiffs' and the Class members' required coverage for post-acute care, Defendant failed to conduct an adequate investigation before denying their claims. Defendant did not consider individual factors that may affect the recovery period or amount of care a patient requires, and routinely ignored the recovery time or treatment prescribed by Plaintiffs' and the Class members' physicians.

118.    As a direct result of Defendant's insurance bad faith, Plaintiffs and the Class have sustained damages in an amount to be determined at trial.

119.    Defendant has engaged in insurance bad faith and are liable to Plaintiffs and the Class for any and all damages that they sustained as a result of its bad faith conduct.

120.    Defendant's bad faith conduct is the actual and proximate cause of the damages sustained by Plaintiffs and the Class.

121.    As a result of Defendant's bad faith conduct, Class members suffered severe emotional distress. Class members did not know whether they would be able to receive necessary care, whether they would be forced to pay out of pocket for said care, or whether they would be financially able to pay for said care, causing severe emotional distress.

122.    Class members' emotional distress caused pecuniary loss whereby they had to pay out of pocket for treatment, by disrupting Class members' lives and schedules, by causing Class members to miss work and lose wages, and by other means.

123.    Defendant's bad faith conduct, as alleged herein, was and continues to be malicious and intentionally designed to deprive Plaintiffs and the Class of their rights under the insurance agreement. Defendant knew of the dire consequences of denying elderly

patients' medical treatment, yet still denied claims without any reasonable or arguable reason for doing so, recklessly and maliciously disregarding the health and lives of Plaintiffs and the Class.

124.   Defendant's misconduct was committed intentionally and willfully, in a malicious, fraudulent, wanton, and oppressive manner, entitling Plaintiffs and Class members to punitive damages against Defendant. Defendant acted with an "evil mind" in wantonly denying Plaintiffs and Class Members necessary care, causing severe physical and emotional turmoil, to increase their profits.

125.   Plaintiffs and the Class are entitled to an award of punitive damages based on Defendant's malicious conduct and their intentional and unreasonable refusal to pay claims.

126.   By reason of the conduct of Defendant as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorneys' fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

127.   Defendant had no reasonable basis for the denial of coverage.

128.   Defendant knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial of Plaintiffs' and Class members' claims.

129.   Defendant's conduct constitutes aggravating and outrageous conduct.

130.   By reason of the conduct of Defendant as alleged herein, Plaintiffs are entitled to attorneys' fees and costs associated with bringing this litigation, pursuant to N.C. Gen. Stat. § 75–16.1.

///

///

## SEVENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—ARIZONA
*(On Behalf of Plaintiffs and the Multi-State Class)*

131.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

132.    Defendant had no reasonable basis for the denial of coverage.

133.    Defendant knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial of Plaintiffs' and Class members' claims.

134.    The validity of Plaintiffs' and Class members' claims was readily apparent on its face and would not have been fairly debatable if an adequate investigation had been conducted.

135.    As alleged above, Defendant intentionally breached the implied covenant of good faith and fair dealing by denying Plaintiffs and the Class the security and peace of mind that is the object of the insurance relationship.

136.    A reasonable insurer would not have denied payment of Plaintiffs' and Class members' claims under the facts and circumstances present.

137.    Plaintiffs are entitled to reasonable attorneys' fees and litigation expenses incurred with bringing this action, pursuant to A.R.S. § 12–341.01.

## EIGHTH CAUSE OF ACTION
### INSURANCE BAD FAITH—CALIFORNIA
*(On Behalf of Plaintiffs and the Multi-State Class)*

138.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

139.    Defendant withheld benefits due under the insurance agreement by refusing to pay Plaintiffs' and Class members' claims.

140.    Defendant had no reasonable basis for the denial of coverage.

141.    Defendant knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial.

142.    By using nH Predict to determine whether to deny coverage instead of independent review by physicians, Defendant failed to act reasonably in processing and handling Plaintiffs' claims.

143.    By reason of the conduct of Defendant as alleged herein, Plaintiffs are entitled to consequential damages pursuant to Cal. Civ. Code § 3300.

144.    By reason of the conduct of Defendant as alleged herein, Plaintiffs are entitled to emotional distress damages pursuant to Cal. Civ. Code § 3333.

145.    By reason of the conduct of Defendant as alleged herein, Plaintiffs are entitled to punitive damages pursuant to Cal Civ. Code § 3294(a).

### NINTH CAUSE OF ACTION
### INSURANCE BAD FAITH—COLORADO
*(On Behalf of Plaintiffs and the Multi-State Class)*

146.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

147.    Defendant had no reasonable basis for the denial of coverage.

148.    Defendant knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial.

149.    By using nH Predict to decide to deny coverage, Defendant denied Plaintiffs' and Class members' claims without a reasonable basis.

150.    By reason of the conduct of Defendant as alleged herein, Plaintiffs and members of the Class are entitled to punitive damages pursuant to C.R.S. § 13–21–102(3)(a).

## TENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—DELAWARE
*(On Behalf of Plaintiffs and the Multi-State Class)*

151.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

152.    Defendant withheld benefits due under the insurance agreement by refusing to pay Plaintiffs' claims.

153.    Defendant's denial of Plaintiffs' and Class members' claims was clearly without any reasonable justification.

154.    By using nH Predict to decide to deny Plaintiffs' claims, Defendant failed to conduct an adequate investigation before denying Plaintiffs' and Class members' claims.

155.    Defendant's habitual use of nH Predict to deny insurance claims constitutes a general business practice of denying insurance claims without a reasonable basis.

///

///

## ELEVENTH CAUSE OF ACTION

31

## INSURANCE BAD FAITH—HAWAII
### *(On Behalf of Plaintiffs and the Multi-State Class)*

156.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

157.    Defendant withheld benefits due under the insurance agreement by refusing to pay Plaintiffs' claims.

158.    Defendant's reason for denying Plaintiffs' and Class members' claims was unreasonable and without proper cause.

159.    By using nH Predict to determine whether to deny coverage, Defendant failed to act reasonably in processing and handling Plaintiffs' and Class members' claims.

160.    By reason of the conduct of Defendant as alleged herein, Plaintiffs are entitled to attorneys' fees and costs associated with bringing this litigation, pursuant to Haw. Rev. Stat. § 431:10–242.

## TWELFTH CAUSE OF ACTION
## INSURANCE BAD FAITH—IOWA
### *(On Behalf of Plaintiffs and the Multi-State Class)*

161.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

162.    Defendant had no reasonable basis for the denial of coverage.

163.    Defendant knew or had reason to know that the nH Predict system was an inadequate method for deciding to deny claims and knew or had reason to know that the nH Predict AI Model was not a reasonable basis to deny claims.

164.    The validity of Plaintiffs' and Class members' claims were not fairly debatable as a matter of fact or law.

165.   By using nH Predict to determine whether to deny coverage instead of independent review, Defendant failed to act reasonably in processing and handling Plaintiffs' and Class members' claims.

166.   Defendant's bad faith conduct caused Plaintiffs and the Class severe mental suffering.

## THIRTEENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—KENTUCKY
*(On Behalf of Plaintiffs and the Multi-State Class)*

167.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

168.   Defendant was obligated to pay Plaintiffs' and Class members' claims under the insurance agreement.

169.   Defendant had no reasonable basis for the denial of coverage.

170.   Defendant knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial.

## FOURTEENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—MASSACHUSETTS
*(On Behalf of Plaintiffs and the Multi-State Class)*

171.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

172.   Defendant withheld benefits due under the insurance agreement by refusing to pay Plaintiffs' claims.

173.   Defendant's reason for denying Plaintiffs' and Class members' claims was unreasonable and without proper cause.

174.    By using nH Predict to determine whether to deny coverage, Defendant failed to act reasonably in processing and handling Plaintiffs' and Class members' claims.

**FIFTEENTH CAUSE OF ACTION**
**INSURANCE BAD FAITH—NEBRASKA**
*(On Behalf of Plaintiffs and the Multi-State Class)*

175.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

176.    Defendant had no reasonable basis for the denial of coverage.

177.    Defendant knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial.

**SIXTEENTH CAUSE OF ACTION**
**INSURANCE BAD FAITH—NORTH DAKOTA**
*(On Behalf of Plaintiffs and the Multi-State Class)*

178.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

179.    The claims that Plaintiffs and Class members submitted to Defendant were covered by the insurance policy, and ought to have been paid.

180.    Defendant's reasons for denying Plaintiffs' and Class members' claims were unreasonable and without proper cause.

181.    Defendant's denials of Plaintiffs' and Class members' claims were based on the malicious implementation of the nH Predict AI Model intended to enable Defendant to deny as many claims as possible and to pay out as little as possible. The validity of

Plaintiffs' and Class members' claims was neither fairly debatable, nor was there a reasonable basis for denying the claim.

## SEVENTEENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—OHIO
#### *(On Behalf of Plaintiffs and the Multi-State Class)*

182.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

183.    By using nH Predict to determine whether to deny coverage, Defendant failed to act reasonably in processing and handling Plaintiffs' and Class members' claims.

184.    Defendant's denial of Plaintiffs' and Class members' claims was based on the malicious implementation of the nH Predict AI Model intended to enable Defendant to deny as many claims as possible and to pay out as little as possible. Defendant's refusal to pay Plaintiffs' and Class members' claims was not predicated upon circumstances that furnish reasonable justification therefore.

185.    Defendant's use of the nH Predict AI Model to deny Plaintiffs' and Class members' claims constitutes refusal to pay claims in an arbitrary and capricious manner.

///

///

## EIGHTEENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—OKLAHOMA
#### *(On Behalf of Plaintiffs and the Multi-State Class)*

186.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

187.    Plaintiffs and Class members were covered persons under the insurance agreement.

188.     Defendant's use of the nH Predict AI Model to deny Plaintiffs' and Class members' claims without an individual or holistic review was unreasonable under the circumstances.

189.     By using the nH Predict AI Model to unreasonably deny Plaintiffs' and Class members' claims, Defendant failed to deal fairly and act in good faith in its handling of Plaintiffs' and Class members' claims.

190.     As alleged above, Defendant's conduct breached the duty of good faith and fair dealing, directly causing Plaintiffs' and Class members' damages.

191.     Defendant knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial.

192.     By reason of the conduct of Defendant as alleged herein, Plaintiffs are entitled to attorneys' fees and costs associated with bringing this litigation, pursuant to Okla. Stat. Title 36 § 3629.

///

///

### NINETEENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—RHODE ISLAND
### *(On Behalf of Plaintiffs and the Multi-State Class)*

193.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

194.     Defendant had no reasonable basis for the denial of coverage.

195.    Defendant knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial.

196.    Defendant failed to conduct an independent holistic review of Plaintiffs' and Class members' claims.

197.    Defendant acted unreasonably in its evaluation and processing of Plaintiffs'and Class members' claims and knew or was conscious of the fact that their implementation of the nH Predict AI Model to deny Plaintiffs' and Class members' claims was unreasonable.

198.    Defendant's denials of Plaintiffs' and Class members' claims were based on the malicious implementation of the nH Predict AI Model intended to enable Defendant to deny as many claims as possible and to pay out as little as possible. The validity of Plaintiffs' and Class members' claims was neither fairly debatable, nor was there a reasonable basis for denying the claim.

///

///

///

## TWENTIETH CAUSE OF ACTION
### INSURANCE BAD FAITH—SOUTH CAROLINA
*(On Behalf of Plaintiffs and the Multi-State Class)*

199.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

37

200.    Plaintiffs and Class members entered into insurance agreements with Defendant that provided for coverage for medical services administered by healthcare providers.

201.    Defendant refused to pay Plaintiffs' and Class members' claims as required by the insurance agreement.

202.    Defendant deployed the nH Predict AI Model to unreasonably deny claims that ought to have not been denied, in bad faith and in violation of the insurance agreement.

203.    As alleged above, Defendant's conduct breached the duty of good faith and fair dealing.

204.    Plaintiffs and Class members suffered damages as a result of Defendant's bad faith.

205.    Defendant's denial of Plaintiffs' and Class members' claims was based on the malicious implementation of the nH Predict AI Model intended to enable Defendant to deny as many claims as possible and to pay out as little as possible. Defendant had no reasonable grounds for contesting and denying Plaintiffs' and Class members' claims.

206.    By reason of the conduct of Defendant as alleged herein, Plaintiffs are entitled to reasonable attorneys' fees and costs associated with bringing this litigation, pursuant to S.C. Code Ann. § 38–59–40.

## TWENTY-FIRST CAUSE OF ACTION
### INSURANCE BAD FAITH—SOUTH DAKOTA
*(On Behalf of Plaintiffs and the Multi-State Class)*

207.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

38

208.    Defendant's denials of Plaintiffs' and Class members' claims were based on the malicious implementation of the nH Predict AI Model intended to enable Defendant to deny as many claims as possible and to pay out as little as possible. Defendant had no reasonable basis for denying Plaintiffs' and Class members' claims, withholding policy benefits, or failing to comply with the insurance agreement.

209.    Defendant knew or had reason to know that the nH Predict system was an inadequate method for deciding to deny claims and knew or had reason to know that the nH Predict AI Model was not a reasonable basis to deny claims.

210.    Defendant failed to conduct an adequate independent investigation into Plaintiffs' and Class members' claims before issuing a denial, acting with reckless disregard for whether there was a reasonable basis to deny the claims.

211.    Plaintiffs and Class members sustained damages as a result of Defendant's bad faith.

212.    The validity of Plaintiffs' and Class members' claims was readily apparent on its face and was not fairly debatable after an adequate investigation.

///

///

///

### TWENTY-SECOND CAUSE OF ACTION
### INSURANCE BAD FAITH—VERMONT
*(On Behalf of Plaintiffs and the Multi-State Class)*

213.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

214.     Defendant's denials of Plaintiffs' and Class members' claims were based on the malicious implementation of the nH Predict AI Model intended to enable Defendant to deny as many claims as possible and to pay out as little as possible. Defendant had no reasonable basis for denying Plaintiffs' and Class members' claims, withholding policy benefits, or failing to comply with the insurance agreement.

215.     Defendant knew or had reason to know that the nH Predict system was an inadequate method for deciding to deny claims and knew or had reason to know that the nH Predict AI Model was not a reasonable basis to deny claims.

216.     Defendant failed to conduct an adequate independent investigation into Plaintiffs' and Class members' claims before issuing a denial, acting with reckless disregard for whether there was a reasonable basis to deny the claims.

**TWENTY-THIRD CAUSE OF ACTION**
**INSURANCE BAD FAITH—WASHINGTON**
*(On Behalf of Plaintiffs and the Multi-State Class)*

217.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

218.     Defendant's denial of Plaintiffs' claims was based on the malicious implementation of the nH Predict AI Model intended to enable Defendant to deny as many claims as possible and to pay out as little as possible. Defendant's denials of Plaintiffs' claims were unreasonable, frivolous, and unfounded.

219.     Defendant's denials of Plaintiffs' and Class members' claims were based on generalized data from the nH Predict system, not on facts specific to Plaintiffs' and Class members' claims. Consequently, Defendant acted unreasonably in performing its

"investigation" of Plaintiffs' and Class members' claims, and the denials were not based upon a reasonable interpretation of the insurance agreement.

220.    Defendant failed to conduct an adequate independent investigation into Plaintiffs' and Class members' claims before issuing a denial, acting with reckless disregard for whether there was a reasonable basis to deny the claims.

221.    By reason of the conduct of Defendant as alleged herein, Plaintiffs are entitled to damages enhancements pursuant to RCW 48.30.015.

### TWENTY-FOURTH CAUSE OF ACTION
### INSURANCE BAD FAITH—WEST VIRGINIA
*(On Behalf of Plaintiffs and the Multi-State Class)*

222.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

223.    Defendant's denial of Plaintiffs' and Class members' claims was based on the malicious implementation of the nH Predict AI Model intended to enable Defendant to deny as many claims as possible and to pay out as little as possible. The validity of Plaintiffs' and Class members' claims was neither fairly debatable, nor was there a reasonable basis for denying the claim.

224.    Defendant knew or had reason to know that the nH Predict system was an inadequate method for deciding to deny claims and knew or had reason to know that the nH Predict AI Model was not a reasonable basis to deny claims.

225.    Defendant failed to conduct an adequate independent investigation into Plaintiffs' and Class members' claims before issuing a denial, acting with reckless disregard for whether there was a reasonable basis to deny the claims.

## TWENTY-FIFTH CAUSE OF ACTION
## INSURANCE BAD FAITH—WISCONSIN
### *(On Behalf of Plaintiffs and the Multi-State Class)*

226. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

227. Had Defendant conducted a reasonable and adequate investigation of Plaintiffs' and Class members' claims on an individual and holistic basis, it would have recognized that it was required to pay Plaintiffs' and Class members' claims.

228. Defendant deployed the nH Predict AI Model to unreasonably deny claims that ought to have not been denied, in bad faith and in violation of the insurance agreement.

229. Defendant's denial of Plaintiffs' and Class members' claims was based on the malicious implementation of the nH Predict AI Model intended to enable Defendant to deny as many claims as possible and to pay out as little as possible. Defendant's denial of Plaintiffs' and Class members' claims was not the result of an honest disagreement or an innocent mistake.

230. Defendant failed to conduct an adequate independent investigation into Plaintiffs' and Class members' claims before issuing a denial, acting with reckless disregard for whether there was a reasonable basis to deny the claims.

## TWENTY-SIXTH CAUSE OF ACTION
## INSURANCE BAD FAITH—WYOMING
### *(On Behalf of Plaintiffs and the Multi-State Class)*

231. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

232. Defendant's denial of Plaintiffs' and Class members' claims were based on the malicious implementation of the nH Predict AI Model intended to enable Defendant to

deny as many claims as possible and to pay out as little as possible. The validity of Plaintiffs' and Class members' claims was neither fairly debatable, nor was there a reasonable basis for denying the claim.

233.    A reasonable insurer would not have denied Plaintiffs' and Class members' claims under the facts and circumstances alleged herein.

234.    Defendant knew or had reason to know that the nH Predict system was an inadequate method for deciding to deny claims and knew or had reason to know that the nH Predict AI Model was not a reasonable basis to deny claims.

235.    Defendant failed to conduct an adequate independent investigation into Plaintiffs' and Class members' claims before issuing a denial, acting with reckless disregard for whether there was a reasonable basis to deny the claims.

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request that this Court enter an order granting the following relief against Defendant:

a.    Awarding actual damages, consequential damages, statutory damages, exemplary/punitive damages, costs and attorneys' fees;

b.    Awarding damages for emotional distress;

c.    Awarding disgorgement and/or restitution;

d.    Awarding pre-judgment interest to the extent permitted by law;

e.      Appropriate declaratory and injunctive relief enjoining Defendant from continuing its improper and unlawful claim handling practices as set forth herein;

f.      Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial on all triable issues.

DATED: December 12, 2023                    **GUILFOYLE LAW OFFICE**

By: /s/James F Guilfoyle
_____

James F. Guilfoyle, Esq.
**GUILFOYLE LAW OFFICE**
211 East Market Street
New Albany, IN 47150
Tel: (502) 208-9704
james@guilfoylelawoffice.com


Glenn A. Danas, Esq.
Ryan Clarkson, Esq.
Zarrina Ozari, Esq.
Pro Hac Vice Forthcoming
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
gdanas@clarksonlawfirm.com
rclarkson@clarksonlawfirm.com
zozari@clarksonlawfirm.com

*Attorneys for Plaintiffs*